UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| V. | ) | No. 2:11-CR-81 |
| | ) | |
| WILLIAM McMAHAN, *ET AL.* | ) | |

## REPORT AND RECOMMENDATION

On October 29, 2010, Special Agent Gregory Smith of the Federal Bureau of Investigation, and Special Agent Jim Williams of the Tennessee Bureau of Investigation, had a conversation with the defendant Rodney Tullock at his residence in Afton, Tennessee, during which defendant solidly incriminated himself regarding his criminal activities. Defendant has filed a motion to suppress his statements, (Doc. 265), claiming that he was in custody at the time, and he was never given his *Miranda* warnings.[1] This motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636.

An evidentiary hearing was held on December 7, 2011, at which both Special Agent Smith and Special Agent Williams testified.

Special Agents Smith and Williams, by virtue of on-going investigation, knew of this defendant's criminal activity and his involvement with the co-defendant, William McMahan.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Smith and Williams went to defendant's house on October 29, 2010, with the hope that defendant would agree to cooperate with their investigation.

When they knocked, the door was answered by defendant's girlfriend. When defendant arrived at the door, he invited the agents to enter his house. Both agents were casually dressed and, although they were both armed, their weapons were not visible.

All three men went into the tv room and sat down. The agents told defendant why they were there; that they knew of his criminal activity; that he did not have to talk to them, if he did not want to; that he confronted potentially serious criminal problems, and this was an opportunity to help himself, if he so desired.

Defendant was never given a *Miranda* warning.

The agents told defendant that their conversation could be somewhat embarrassing, and if defendant did not wish his girlfriend to overhear it, they could either take a drive in the agents' vehicle, or he could ask his girlfriend to leave, as he preferred. Defendant opted for the latter alternative, and the girlfriend left the house.

Defendant argues that what admittedly commenced as a non-custodial interview metamorphosed into a custodial interrogation. It definitely did not.

There were never any threats, and the conversation remained calm and civil. Indeed, the conversation went so well that the agents were under the impression that defendant wished to cooperate in the continuing investigation, and they made arrangements to meet at a later date. Defendant telephoned Agent Williams approximately a week later, as a result of which Special Agents Williams and Smith, along with other law enforcement agents, met

the defendant at the City Park in Newport several days later. During that conversation, defendant obviously reconsidered, and repented of, his earlier decision to cooperate, and he indicated that he no longer wanted to do so. At that point, he left the City Park, and neither Williams nor Smith had any further contact with defendant until his indictment and arrest.

*Miranda* warnings are required only when an individual is interrogated while in custody or its functional equivalent. *Miranda*, *supra*. A person is "in custody" for *Miranda* purposes if his "freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). There are a number of factors to consider in determining whether or not a suspect's freedom is curtailed to a significant degree, including the purpose of the questioning; whether the place of the questioning is hostile or coercive, the length of time the questioning persists, etc. *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998). There was nothing about the agents' visit to defendant's house and their subsequent questioning of defendant that remotely could be described as coercive. Obviously, defendant's house could hardly be described as a coercive environment. To be sure, the agents told defendant that they knew of his criminal activity, and they also suggested to him that he was in deep trouble. But telling a defendant the truth hardly can be construed as coercive or hostile. Moreover, nothing else about the agents' actions, words, or demeanor could be described as either hostile or coercive.

In short, defendant was not in custody, and he was not in the functional equivalent of custody, and defendant was well aware that he could refuse to talk to the agents.

It is respectfully recommended that defendant's motion to suppress his statements, (Doc. 265), be denied.[2]

Respectfully submitted,

                                                              s/ Dennis H. Inman
                                                           United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).

4